UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES DEE,<br><br>    *Plaintiff*,<br><br>v.<br><br>JENNIFER M. GRANHOLM,<br><br>    *Defendant*. | Civil Action No. 23-1950 (LLA) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charles Dee brings this action against the Secretary of Energy in her official capacity, alleging disparate treatment on the basis of race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; disparate treatment on the basis of age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; retaliation under Title VII and the ADEA; disparate treatment on the basis of disability, failure to accommodate, failure to provide access, and hostile work environment in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*; and constructive discharge in violation of Title VII and the Rehabilitation Act. ECF No. 1. The Secretary has moved to dismiss all claims except for the failure to accommodate claim under the Rehabilitation Act, ECF No. 8, and Mr. Dee has filed a motion for discovery under Federal Rule of Civil Procedure 56(d), ECF No. 11. For the reasons explained below, the court will grant the Secretary's partial motion to dismiss and deny Mr. Dee's motion for discovery as moot.

### I.    Factual Background

In resolving the Secretary's motion to dismiss, the court accepts the following factual allegations from Mr. Dee's complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Mr. Dee, an African American man over forty years old, has been permanently blind since 1982 and "requires accommodations with most aspects of life." ECF No. 1 ¶¶ 18-19. From July 2017 through July 2021, he worked as a Human Resources Specialist with the National Nuclear Security Administration ("NNSA"), an agency within the Department of Energy ("DOE"). *Id.* ¶¶ 21-22. At all times, Mr. Dee's employer was aware of his race, age, sex, and disability. *Id.* ¶¶ 18-19.

The use of a laptop, software applications, and other electronic tools were essential to Mr. Dee's job because his typical workday included reviewing policies, regulations, and case law; preparing written work product; corresponding over email; accessing information on the Internet; and accessing software and applications unique to NNSA and DOE. *Id.* ¶ 26. With reasonable accommodations of assistive tools and software, Mr. Dee was qualified and able to perform his required job duties. *Id.* ¶ 27.

In late 2017, Mr. Dee began experiencing "issues with his reasonable accommodations, particularly with performance management system ('PAMS') accessibility and the Rehabilitation Act Section 508 non-complaint servers," *id.* ¶ 28, as well as the screen-reading software on his work-issued laptop, *id.* ¶ 30. He raised his concerns with management and asked that the servers be brought into compliance with Section 508, and he also requested a Braille printer, an accessible MacBook computer, and the services of a personal assistant. *Id.* ¶ 28. Even after enlisting the help of supervisors, Mr. Dee was unable to secure information technology such as the MacBook. *Id.* ¶¶ 28-29. Despite his technical troubles, Mr. Dee received performance ratings of "Significantly Exceeding Expectations" for Fiscal Years 2018 and 2019. *Id.* ¶ 32.

In November 2019, Mr. Dee oversaw a "fact finding and climate assessment" for a division within NNSA, and he recommended that "the associate administrator be admonished

2

and other corrective steps be taken to address the misconduct taking place in the organization." *Id.* ¶ 34. Mr. Dee was subsequently removed from the investigation because supervisors in his office "wanted to move the investigation to the Office of Internal Affairs." *Id.* In March 2020, Mr. Dee served as a witness as part of a colleague's equal employment opportunity ("EEO") claim. *Id.* ¶ 35.

In May 2020, Mr. Dee applied to be promoted to the position of Supervisory Human Resources Specialist, Employee-Management Relations. *Id.* ¶ 37. While he was a "Selectee" for the position, *id.*, Dr. Donna Mischell Navarro, the Chief Human Capital Office for NNSA, "called all members of the selecting panel . . . to explained that, while the whole panel had recommended [Mr. Dee] . . . she did not feel that upper leadership would agree with his selection due to his 'challenges,'" *id.* ¶ 38. Mr. Dee alleges that Dr. Navarro was referencing his disability. *Id.* ¶ 38. The position was not filled. *Id.* ¶ 39.

In August 2020, the position was reposted. *Id.* ¶ 40. Mr. Dee again applied and was interviewed, but he learned in October 2020 that he had not been selected for the role. *Id.* ¶¶ 40-42. Although at least one member of the hiring panel had scored Mr. Dee the highest, Melanie Ramirez, a non-Black woman without a disability, was chosen. *Id.* ¶ 42. On November 18, 2020, Mr. Dee initiated an informal complaint process with DOE's EEO counselor about having not been selected for the promotion. *Id.* ¶¶ 7, 43. He alleges that DOE management was aware of his protected EEO activity. *Id.* ¶ 43.

In October or November 2020, Mr. Dee received a performance rating of "Fully Meeting Expectations." *Id.* ¶ 44. This was lower than his usual performance rating of "Significantly Exceeding Expectations," and Mr. Dee alleges that it was in retaliation for his protected EEO

activity. *Id.* ¶¶ 44, 133. Mr. Dee requested reconsideration of the rating, but his request was denied. *Id.* ¶ 44.

At some point during the pandemic, Mr. Dee again requested the services of a personal assistant and asked that a particular individual whom he knew be assigned to the role. *Id.* ¶ 45. DOE personnel worked on his request, and Mr. Dee was told in December 2020 that there was a contract for the services, *id.* ¶¶ 45-49; however, he did not receive personal assistant services before he ultimately resigned in June 2021, *id.* ¶¶ 46-47. Mr. Dee alleges that he was denied personal assistant services "in retaliation for his protected activity." *Id.* ¶ 47.

Additionally, during this time, Mr. Dee was unable to complete mandatory training because it was not accessible for those with visual impairments. *Id.* ¶ 51. From March to May 2021, he was unable to log on to his laptop because it was protected by a "Bit Locker" that was not accessible, and for a period between May and June 2021, he was unable to access "more than three months' worth of essential emails," although he does not say whether this was due to an accessibility issue or an unrelated technological issue. *Id.* ¶¶ 52-53.

Due to the ongoing lack of accommodations, Mr. Dee invoked the Family Medical Leave Act, 29 U.S.C § 2601 *et seq.*, due to "severe distress, anxiety, and panic attacks." *Id.* ¶ 54. Mr. Dee ultimately resigned in June 2021, and he alleges that he was "forced to resign . . . due to intolerable working conditions." *Id.* ¶ 56.

## II. Procedural History

As noted, Mr. Dee contacted DOE's EEO counselor on November 18, 2020 to lodge an informal complaint about not being selected for the promotion. *Id.* ¶ 7; *see* 29 C.F.R. § 1614.105(a) (setting forth the process for an informal complaint). On January 13, 2021, Mr. Dee filed a formal EEO complaint alleging discrimination "based on race, color, gender, and physical

4

disability" as well as "reprisal and harassment that created a hostile work environment." ECF No. 1 ¶ 8; *see* 29 C.F.R. § 1614.106 (setting forth the process for a formal complaint).

On June 17, 2021, Mr. Dee lodged a second informal complaint with DOE's EEO office concerning his inability to obtain personal assistant services. ECF No. 1 ¶ 9. On or around September 23, 2021, he filed a formal EEO complaint alleging "discrimination based on race, color, physical disability, and retaliation." *Id.* ¶ 10. Mr. Dee requested that the matters be consolidated and that an Administrative Law Judge with the Equal Opportunity Employment Commission hold a hearing. *Id.* ¶¶ 11-12. He received a final decision on the consolidated matters on May 31, 2023. *Id.* ¶ 16.

Meanwhile, on October 5, 2021, Mr. Dee filed a third formal EEO complaint alleging "discrimination and/or harassment based on disability." *Id.* ¶ 14. He received a final decision on that matter on April 7, 2023. *Id.* ¶ 15.

On July 6, 2023, Mr. Dee filed a complaint in this court stemming from the matters in his three EEO complaints. *See generally id.* He alleges disparate treatment on the basis of race (Count I) and gender (Count II) in violation of Title VII, disparate treatment on the basis of age in violation of the ADEA (Count III-A),[1] retaliation in violation of Title VII (Count III-B) and the ADEA (Count IV), disparate treatment on the basis of disability (Count V), failure to accommodate (Count VI), failure to provide access (Count VII), and hostile work environment (Count VIII) in violation of the Rehabilitation Act, and constructive discharge in violation of Title VII (Count IX) and the Rehabilitation Act (Count X). *Id.* ¶¶ 58-212. As relief, Mr. Dee seeks $300,000 in compensatory damages, pre- and post-judgment interest, attorney's fees and costs,

---

[1] Mr. Dee's complaint has two counts labeled "Count III," ECF No. 1, at 16, so the court will refer to them as "Count III-A" and "Count III-B."

and "such other and further relief as this Honorable Court deems just and equitable." ECF No. 1, at 29 (Prayer for Damages ¶¶ (a)-(d)).

The Secretary has filed a motion to dismiss all claims except for Count VI, Mr. Dee's failure to accommodate claim. ECF No. 8. Mr. Dee filed an opposition, ECF No. 10, and a motion seeking discovery under Federal Rule of Civil Procedure 56(d), ECF No. 11. The matters are ripe for disposition. ECF Nos. 8, 10, 11, 12.

### III.     Legal Standards

The Secretary seeks dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject-matter jurisdiction over his claims. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Absent subject-matter jurisdiction over a case, the court must dismiss it. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006).

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that are more than "'merely consistent with' a defendant's liability" and that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557); *see Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("Plausibility requires 'more than a sheer possibility that a defendant has acted unlawfully.'" (quoting *Twombly*, 550 U.S. at 556)). "A

6

complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible.'" *Banneker Ventures, LLC*, 798 F.3d at 1129 (alterations in original) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

In deciding a motion under both Rule 12(b)(1) and Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations in the complaint as true, "even if doubtful in fact," and construing all reasonable inferences in the plaintiff's favor. *Twombly*, 550 U.S. at 555; *see Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). However, a court need not "accept inferences drawn by [a] plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (alterations in original) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)); *see Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

### IV.   Discussion

The Secretary moves to dismiss Mr. Dee's ADEA claims (Counts III-A and IV) and his claim of failure to provide access under Section 508 of the Rehabilitation Act (Count VII) for lack of jurisdiction under Rule 12(b)(1). She additionally moves to dismiss his Title VII claims for disparate treatment on the basis of race (Count I) and gender (Count II), retaliation (Count III-B), and constructive discharge (Count IX), and his Rehabilitation Act claims for disparate treatment (Count V), hostile work environment (Count VIII), and constructive discharge (Count X) under Rule 12(b)(6). The court will grant the motion to dismiss.

#### A.   Rule 12(b)(1)

To satisfy the constitutional requirement for standing, the plaintiff must show: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal

7

connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S.555, 560-61 (1992)).  If a claim is barred by sovereign immunity, it is not redressable. *See Seed v. Env't Prot. Agency*, 100 F.4th 257, 265 (D.C. Cir. 2024) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983))).  The Secretary argues that Mr. Dee lacks standing to pursue his ADEA claims (Counts III-A and IV) and his Section 508 claim (Count VII) because the United States has not waived sovereign immunity for the relief he seeks—compensatory damages—and thus his claims are not redressable.  ECF No. 8-1, at 5-9. The court agrees.

1.   **ADEA Claims**

The ADEA's federal-sector provision protects federal employees and applicants for federal employment who are forty and older from being discriminated against on the basis of age. 29 U.S.C. § 633a.  The provision "waive[s] the United States' sovereign immunity for certain federal employers by providing for 'legal or equitable relief,'" *Seed*, 100 F.4th at 265 (quoting 29 U.S.C. 633a(c))—specifically, "reinstatement, backpay, or injunctive or declaratory relief," *id.* at 263—but it does not waive "sovereign immunity for compensatory or punitive damages," *id.* at 265.  In his complaint, Mr. Dee seeks $300,000 in compensatory damages for the violations he alleges, which include his claims under the ADEA.  ECF No. 1, Prayer for Relief ¶ (a).  Because the United States has not waived its sovereign immunity for a claim for compensatory damages under the ADEA, Mr. Dee lacks standing to bring Counts III-A and IV.  *Seed*, 100 F.4th at 265-66.

Mr. Dee attempts to escape this conclusion by arguing that his complaint also seeks "such other and further relief as th[e] Honorable Court deems just and equitable."  ECF No. 10-1, at 15

8

(quoiting ECF No. 1, Prayer for Relief ¶ (d)). But the D.C. Circuit has explained that "[w]hile it is true that [Federal Rule of Civil Procedure] 54(c) allows a court to grant relief not specifically sought, [the court] cannot save [a] claim [for dismissal for lack of subject-matter jurisdiction] by reading the complaint's boilerplate prayer for 'such other relief as the Court may deem just and proper.'" *Emory v. United Air Lines, Inc.*, 720 F.3d 915, 921 n.10 (D.C. Cir. 2013) (alteration omitted). This is because "Rule 54(c) comes into play only *after* the court determines it has jurisdiction." *Hedgepeth ex rel. Hedgepeth v. Wash. Metro. Area Transit Auth.*, 386 F.3d 1148, 1152 n.2 (D.C. Cir. 2004) (emphasis added) (quoting *NAACP, Jefferson Cnty. Branch v. U.S. Sugar Corp.*, 84 F.3d 1432, 1438 (D.C. Cir. 1996)). Accordingly, the boilerplate language in Mr. Dee's complaint cannot confer standing. *Id.* The court will dismiss Counts III-A and IV without prejudice. *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020) ("[A] dismissal for want of subject-matter jurisdiction can only be without prejudice.")

### 2. Section 508 Claim

Section 508 of the Rehabilitation Act, codified at 29 U.S.C. § 794d, requires federal agencies to ensure that their electronic and information technology allows "individuals with disabilities who are Federal employees to have access to and use of information and data that is comparable to the access to and use of the information and data by Federal employees who are not individuals with disabilities." 29 U.S.C. § 794d(a)(1)(A)(i). The D.C. Circuit has recognized that "[t]he plain text of Section 794d extends a private right of action to all persons with disabilities who file administrative complaints requesting accessible technology and who seek only injunctive and declaratory relief." *Orozco v. Garland*, 60 F.4th 684, 685 (D.C. Cir. 2023).

In his complaint, Mr. Dee does not seek injunctive or declaratory relief—as noted, he seeks $300,000 in compensatory damages. ECF No. 1, Prayer for Relief ¶ (a). And, as with his ADEA

claims, his boilerplate prayer cannot save the day.  *Hedgepeth*, 386 F.3d at 1152 n.2.  The court will dismiss Count VII without prejudice.

### B.     Rule 12(b)(6)

The Secretary moves to dismiss all but one of Mr. Dee's remaining claims (Count VI) arguing that Mr. Dee has failed to exhaust his administrative remedies for any claims predating October 4, 2020, ECF No. 8-1, at 9-11, and that he otherwise fails to state plausible claims on which relief can be granted, *id.* at 11-27.  The court agrees with the Secretary and will dismiss the claims without prejudice.[2]

#### 1.     Exhaustion

Before filing suit under Title VII or the Rehabilitation Act, a plaintiff must timely exhaust his administrative remedies.  *Coleman v. Duke*, 867 F.3d 204, 206 (D.C. Cir. 2017) (Title VII); *Doak v. Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015) (Rehabilitation Act).  To do so, the employee must first contact an EEO counselor to report alleged discrimination within forty-five days of the incident.  29 C.F.R. § 1614.105(a).  If counseling is unsuccessful, the employee must file an administrative complaint, *id.* § 1614.106, which "serves the important purpose of giving the charged party notice of the claim," *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995).  While the administrative charge requirement "should not be construed to place a heavy technical burden on 'individuals untrained in negotiating procedural labyrinths,' . . . [a] court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process."  *Park*, 71 F.3d at 907 (quoting *Loe v. Heckler*, 768 F.2d 409,

---

[2] A dismissal under Rule 12(b)(6) "operates as an adjudication on the merits," Fed. R. Civ. P. 41(b), and is typically with prejudice, *see Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 132 (D.C. Cir. 2012) (Kavanaugh, J., concurring).  Here, "the parties agree that any dismissal should be without prejudice," ECF No. 13, at 13, and the court will accommodate the parties' agreement.

417 (D.C. Cir. 1985)). Because the failure to exhaust administrative remedies is an affirmative defense, the defendant bears the burden to plead (and ultimately, prove) the plaintiff's failure to exhaust. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). But if the defendant carries her burden, the unexhausted claims must be dismissed. *Fortune v. Holder*, 767 F. Supp. 2d 116, 122-23 (D.D.C. 2011) (dismissing the plaintiff's claims under Title VII and the Rehabilitation Act because he did not initiate EEO contact within forty-five days of the allegedly discriminatory acts).

Mr. Dee first initiated contact with an EEO counselor on November 18, 2020 in connection with his non-selection after his second application for a promotion, which he learned about on October 5, 2020. ECF No. 1 ¶ 7. Because fewer than forty-five days elapsed between October 5 and November 18, 2020, Mr. Dee exhausted his administrative remedies with regard to the second non-selection. But Mr. Dee's complaint also alleges discrete acts of discrimination that occurred more than forty-five days before November 18, 2020. ECF No. 1 ¶¶ 28-31 (allegations concerning a lack of reasonable accommodations in 2017 and 2018); *id*. ¶ 36 (allegation regarding a software update that failed to resolve accessibility issues in April, May, and July 2020); *id*. ¶¶ 37, 40 (allegations regarding Mr. Dee's May 2020 application and non-selection for the open Supervisory Human Resources Specialist position). Because he did not contact his EEO counselor within forty-five days of those events, he has not exhausted his administrative remedies for those claims.

Mr. Dee suggests that he should be excused from his failure to exhaust his administrative remedies for discrete incidents that occurred before October 4, 2020—forty-five days before November 18, 2020—under the doctrine of equitable tolling. ECF No. 10-1, at 19-20. However, he fails to substantiate his claim with any explanation why equitable tolling would be warranted. He additionally contends that the court may consider claims that are "reasonably related" to his exhausted claims even though he did not timely present them to DOE's EEO counselor. *Id.* at 20

(quoting *Sydnor v. Fairfax County*, 681 F.3d 591, 594 (4th Cir. 2012)).  But it is well settled that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Accordingly, Mr. Dee may not proceed on any discrete acts of discrimination that occurred before October 4, 2020, because he did not exhaust his administrative remedies.

The inquiry is different, however, with regard to Mr. Dee's hostile work environment claim under the Rehabilitation Act (Count VIII).[3]  As long as one "act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for purposes of determining liability."  *Morgan*, 536 U.S. at 117.  Mr. Dee administratively exhausted his claim that he had not been selected for the promotion on October 5, 2020 on the basis of his disability.  He has thus properly exhausted his administrative remedies for all disability-related allegations in the complaint as they relate to his hostile work environment claim.

## 2. Disparate Treatment

The Secretary seeks dismissal of Mr. Dee's disparate treatment claims on the basis of race (Count I) and gender (Count II) under Title VII and his disparate treatment claim on the basis of disability (Count V) under the Rehabilitation Act.  ECF No. 8-1, at 11-15.

Title VII makes it unlawful for an employer to discriminate against any individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability . . . be subjected to discrimination" by any program

---

[3] Mr. Dee raises a hostile work environment claim solely under the Rehabilitation Act. ECF No. 1 ¶¶ 195-204.  Curiously, the Secretary briefs the claim as if Mr. Dee were alleging a hostile work environment on bases other than disability, *see* ECF No. 13, at 9-13 & n.4.

12

receiving federal funding.  29 U.S.C. § 794(a).  Under both statutes, "the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of [his] race, color, religion, sex, national origin, age, or disability."  *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  Mr. Dee bases his disparate treatment claims on his non-selection for the promotion on October 5, 2020 and his receipt of a lower score on his 2020 performance evaluation.  ECF No. 1 ¶¶ 67-70.  The Secretary does not contest that these events qualify as adverse actions, so the only question before the court is whether Mr. Dee has plausibly alleged a causal connection between these adverse actions and his protected traits.

Mr. Dee has failed to do so.  While Mr. Dee need not allege "detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555, he must allege "sufficient factual matter, [when] accepted as true, . . . 'state[s] a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  In non-selection cases, this can be achieved by "identif[ying] a similarly-situated employee who is not in [his] protected class and explain[ing] why [he] has equivalent qualifications."  *Brown v. Sessions*, 774 F.3d 1016, 1023 (D.C. Cir. 2014).  Mr. Dee has satisfied the first prong—he alleges that "Melanie Ramirez, [a] non-African American female without a disability[,] was chosen for the position."  ECF No. 1 ¶ 42.  But he fails on the second prong because he does not allege any non-conclusory facts to suggest that he and Ms. Ramirez were similarly qualified for the position.

*Brown* is a helpful example of what is required to survive a motion to dismiss.  There, the D.C. Circuit held that the plaintiff had sufficiently pleaded a gender-based tenure denial where she pointed to a male counterpart and alleged that they had similar publication records and had made comparable contributions to the university, but he had received tenure while she had not.  774 F.3d at 1023; *see McManus v. Kelly*, 246 F. Supp. 3d 103, 112 (D.D.C. 2017) (denying a motion to

dismiss where the plaintiff's "complaint alleges that, despite her superior qualifications, experience, and expertise, she was passed over for position after position in favor of employees with shorter tenures at the agency and far less relevant experience and that the only plausible explanation for [the agency's] decisions is that the agency was discriminating against her on the basis of her race and age").  In contrast, Mr. Dee does not allege anything about his qualifications for the promotion, let alone compare them to Ms. Ramirez's qualifications.  The most he states is that "at least one panelist scored [him] the highest" and his "qualifications and experience were plainly superior to those of Melanie Ramirez," ECF No. 1 ¶¶ 42, 85, but the first allegation provides little insight and the second is a conclusory assertion devoid of any supporting facts, *see Iqbal*, 556 U.S. 681 (explaining that the court need not credit conclusory assertions).  And Mr. Dee provides no factual allegations to support his claim that his evaluation rating of "Fully Meeting Expectations" was at all related to a protected trait.  ECF No. 1 ¶ 70.  Because Mr. Dee has failed to clear *Iqbal*'s low bar, the court will dismiss Counts I, II, and V.

### 3.     Retaliation

The Secretary argues that Mr. Dee's retaliation claim under Title VII (Count III-B) should be dismissed because Mr. Dee fails to allege sufficient facts to state a plausible claim.  ECF No. 8-1, at 15-19.   Mr. Dee contends that his October 5, 2020 non-selection and lower performance appraisal "amounted to illegal retaliation, as Defendant's actions were motivated to punish [him] for engaging in legally protected activities."  ECF No. 1 ¶ 133.

Title VII prohibits an employer from "discriminat[ing] against any of [its] employees . . . because he has made a charge . . . or participated in any manner in an investigation" of discrimination.  42 U.S.C. § 2000e-3(a).  To survive a motion to dismiss, the plaintiff must plausibly allege that (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal link connects the protected activity and the

adverse action. *See Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009); *Pierre v. Bennett*, 686 F. Supp. 3d 1, 9 (D.D.C. 2023). In the context of a Title VII retaliation claim, "[a] materially adverse action is one that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 57 (2006)). "Typically, a materially adverse action in the workplace involves 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)).[4]

Mr. Dee contends that he engaged in protected activity when he participated in an agency climate review in November 2019, served as a witness in an EEO claim in March 2020, and initiated contact with DOE's EEO counselor on November 18, 2020. ECF. No. 1 ¶¶ 106-07, 113. He alleges as adverse action his October 5, 2020 non-selection and his lower performance appraisal in October or November 2020. *Id.* at ¶¶ 117-19.

The court concludes that Mr. Dee did not suffer a materially adverse action by receiving a performance appraisal of "Fully Meeting Expectations" because he does not allege financial harm, a loss of leave, or other injury or consequence due to the appraisal. Accordingly, the court has no reason to find that the evaluation constituted an adverse action. *See Bridgeforth*, 721 F.3d at 663.

---

[4] While the D.C. Circuit has adopted a lower standard for adverse action in the context of Title VII discrimination claims, *see Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022) (en banc), the *Chambers* Court affirmed that the "material adversity" requirement is "entirely consistent" with the objectives of Title VII's antiretaliation provision, *id.* at 877.

Mr. Dee's non-selection for the promotion in October 2020 certainly qualifies as a materially adverse action. *See id.* But the court concludes that Mr. Dee has failed to allege a causal link between his protected activity and his non-selection.

A plaintiff can allege causal link "by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985). Mr. Dee does not allege that the selection panel knew about his protected activity or that it was the reason for his non-selection. ECF No. 8-1, at 17. Instead, he relies on the temporal proximity between his activities and his non-selection as evidence of causation. ECF No. 10-1, at 29-30. "Temporal proximity can . . . support an inference of causation but only where the two events are 'very close' in time." *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) (citation omitted) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). While there is no bright-line rule, "the Supreme Court has cited circuit decisions suggesting that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation." *Hamilton v. Geithner*, 666 F.3d 1344, 1357-58 (D.C. Cir. 2012).

As noted, Mr. Dee contends that he engaged in protected activity in November 2019, March 2020, and on November 18, 2020. ECF No. 1 ¶ 106-07, 113. There are gaps of about eleven months and seven months between Mr. Dee's November 2019 and March 2020 activities and his October 2020 non-selection for the position. *Id.* ¶ 112. Even if the court measures the time from when Mr. Dee interviewed for the promotion in September 2020, the gaps are still too lengthy to establish a causal link based on temporal proximity alone. *See Hamilton*, 666 F.3d at 1357-58; *see, e.g.*, *Tallbear v. Perry*, 318 F. Supp. 3d 255, 263-64 (D.D.C. 2018) (finding that

a gap of eight months between protected activity and adverse action could not establish an inference of temporal proximity); *Dudley v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 141, 179 (D.D.C. 2013) (describing a six-month gap between alleged protected activity and adverse action as "the outer edge of acceptable temporal proximity"); *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 86 (D.D.C. 2013) (finding that a temporal delay of four months could not support an inference of causation); *Wilson v. Mabus*, 65 F. Supp. 3d 127, 133-34 (D.D.C. 2014) (same). Accordingly, the court will dismiss Count III-B.

### 4.     Hostile Work Environment

The Secretary next seeks dismissal of Mr. Dee's hostile work environment claim (Count VIII). ECF No. 8, at 1, 19-23. To prevail on a hostile work environment claim under the Rehabilitation Act, a plaintiff must show "that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).

It is unclear to the court which incidents Mr. Dee alleges in support of a hostile work environment claim under the Rehabilitation Act. In his complaint, he states that "the conduct of Defendant's management constituted unwelcome actions[] and behavior that was hostile toward [him]," that "the behavior [was] subjectively offensive to [him]," that "the effect of the practices complained of . . . were objectively offensive such that a reasonable person would find that the practices deprived [him] of equal employment opportunities and otherwise adversely affect[ed] his status as an employee because of his disability (blind)." ECF No. 1 ¶¶ 196-98. But he provides

17

no specific facts to support those claims. Nor does he point to specific facts in the complaint in his opposition to the Secretary's motion to dismiss. The most he states is that "the incidents were also severe because they manifest a discriminatory bias, can be characterized as abusive, and pos[e] an unreasonable impediment to plaintiff's performance of his duties." ECF No. 10-1, at 31-32. But absent *any* factual allegations about what Mr. Dee believed to be a hostile work environment on the basis of disability, the court is left to speculate—and, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Accordingly, the court will dismiss Count VIII.

### 5. Constructive Discharge

Finally, the Secretary seeks dismissal of Mr. Dee's claims for constructive discharge under Title VII (Count IX) and the Rehabilitation Act (Count X). ECF No. 8-1, at 23-27. "[T]he test for constructive discharge is an objective one: whether a reasonable person in the employee's position would have felt compelled to resign under the circumstances." *Aliotta v. Blair*, 614 F.3d 556, 566 (D.C. Cir. 2010). "[T]o establish 'constructive discharge,' the plaintiff must make a further showing [than a hostile work environment]: [he] must show that the abusive working environment became so intolerable that [his] resignation qualified as a fitting response." *Steele v. Schafer*, 535 F.3d 689, 694-95 (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004)).

Mr. Dee's allegations again fall well short of that standard. For both claims, Mr. Dee merely alleges that he was "subjected to discriminatory working conditions that were so intolerable that any reasonable person would resign," ECF No. 1 ¶¶ 206, 210, but this is a legal conclusion that the court need not credit, *see Iqbal*, 556 U.S. at 686. Elsewhere in his complaint, Mr. Dee alleges that DOE's failure to provide him reasonable accommodations caused him "to suffer severe distress, anxiety, and panic attacks," ECF No. 1 ¶ 54, and that "resignation proved to be the only option to find relief and avoid a mental breakdown" because he "foresaw that the responsible

management officials would attempt to set him up to fail by not providing the needed accommodations," *id.* ¶ 55. He alleges a lack of reasonable accommodations in the delay in the contract for a personal assistant, *id.* ¶¶ 45-49, and accessibility or technical issues with certain training platforms, Outlook emails, and logging on to his computer, *id.* ¶¶ 51-53. While Mr. Dee has alleged that DOE's failure to timely provide him accommodations placed a hardship on him— that is presumably why the Secretary has not moved to dismiss his failure to accommodate claim (Count VI)—he has not sufficiently alleged that his working conditions were so intolerable that he had no other choice but to resign. Accordingly, the court will dismiss Mr. Dee's constructive discharge claims (Counts IX and X).

### C.     Motion for Discovery

In light of the foregoing, the court will deny Mr. Dee's motion for discovery, ECF No. 11, as moot.

### V.     Conclusion

For the foregoing reasons, it is hereby **ORDERED** that the Secretary's Partial Motion to Dismiss, ECF No. 8, is **GRANTED** and all claims except for Count VI are **DISMISSED** without prejudice. It is further **ORDERED** that Mr. Dee's Motion for Discovery, ECF 11, is **DENIED** as moot. The Secretary shall file an answer to Count VI on or before October 7, 2024. Fed. R. Civ. P. 12(a)(4)(A).

**SO ORDERED.**

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: September 23, 2024